IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MANETIRONY CLERVRAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 318-028 |
| | ) | |
| STACEY STONE; MICHAEL CARTER; | ) | |
| STEVEN CONRY; JOHN BAXTER; | ) | |
| LYNETTE HARRIS; AMANDA KIRLEY; | ) | |
| F. FASSON; S. DAMMONS; A. WRIGHT; | ) | |
| J. COLEMAN; DAVID CHURCHILL; | ) | |
| WILLIAM DALIUS; BEN ELROD; | ) | |
| BRIAN K. FERELL; BRIAN HAMONDS; | ) | |
| NATASHA METCALF; JOHN PFEIFFER; | ) | |
| BRAD REGENS; JOHN ROBINSON; | ) | |
| DAREN SWENSON; BART VERHULS; | ) | |
| JOHN PAUL WOODEN; | ) | |
| and JOE DOES 1 & 2, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, formerly incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, commenced the above-captioned case pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Because Plaintiff is proceeding *in forma pauperis*, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

## I. SCREENING OF THE COMPLAINT

### A. BACKGROUND

Plaintiff names the following Defendants: (1) Stacey Stone, Warden at MCF; (2) Michael Carter, Chief of Security at MCF; (3) Steven Conry, Vice President of Operations and Business at Corrections Corporation of America/CoreCivic ("CCA"); (4) John Baxter, Ed. D., Vice President of Health Services at CCA; (5) Lynette Harris, Unit Manager at MCF; (6) Amanda Kirley, Disciplinary Hearing Officer at MCF; (7) F. Fasson, Captain at MCF; (8) S. Dammons, Captain at MCF; (9) A. Wright, Captain at MCF; (10) J. Coleman, Lieutenant at MCF; (11) David Churchill, Ed. D., Vice President of Human Resources at CCA; (12) William Dalius, Vice President of Facility Operation at CCA; (13) Ben Elrod, Vice President of Compliance and Diversity Management at CCA; (14) Brian K. Ferell, Vice President of Proposal Development at CCA; (15) Brian Hamonds, Vice President of Finance at CCA; (16) Natasha Metcalf, JD, Vice President of Partnership Development at CCA; (17) John Pfeiffer, Vice President of Technology and Chief Information at CCA; (18) Brad Regens, Vice President of Correctional Programs Divisions at CCA; (19) John Robinson, Vice President of Correctional Programs Divisions at CCA; (20) Daren Swenson, Vice President of Community Corrections at CCA; (21) Bart Verhuls, Vice President of Partnership Relations at CCA; (22) John Paul Wooden, Vice President of Treasure and Tax at CCA; (23) Joe Doe 1, BOP Oversight; and (24) Joe Doe 2, BOP Oversight. (See doc. no. 33, pp. 2-10, 5-6.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of screening, the facts are as follows.

Defendants failed to perform their contract obligations under the Contract Clause. (Id. at 13.) On or about May 11, 2012, Plaintiff was designated to MCF and in custody of CCA in

accordance with an illegal contract with Bureau of Prisons ("BOP"). (Id. at 13.) There is privity between MCF and CCA. (Id. at 14.) Defendants were personally involved in the alleged wrongdoing. (Id.) Defendants established policies to bar Plaintiff from receiving books directly from home. (Id.) Plaintiff was in the custody of an "Apartheid operation." (Id.) Plaintiff was exposed to a "pervasive risk [of] physical assault due to lack of security practice and unsanitary condition[s] . . . ." (Id.) Plaintiff was injured by Defendants' criminal enterprise "because . . . he was subject to lack of security, lack of medical treatment, and exposure to death and diseases." (Id.)

Defendants subjected Plaintiff to "restrictive procedures in the grievance administration" by allowing him to file only one grievance at a time, which prevented Plaintiff from filing his complaint to the courts for years. (Id. at 14-15.) The restriction did not advance legitimate institutional goals and was not based on any threat to legitimate penalogical interests. (Id.) Plaintiff was treated differently than other similarly situated inmates. (Id. at 16.) Defendants' decision to accept only one grievance at a time was an intentional interference with his exercise of constitutional rights. (Id.) Defendants acted to withhold evidence of their criminal enterprise from Plaintiff. (Id.) Defendants denied some of Plaintiff's grievances as untimely, denying him the "right to comme[n]ce court litigation against this Criminal Enterprise . . . ." (Id.) The "practice of lack of medical treatment" caused "several immigrant deaths, among others." (Id. at 17.)

Defendants have punished Plaintiff with several false incident reports and discriminatorily denied his challenges to them. (Id.) Plaintiff suffered mental anguish and physical ailments when Defendants held him in a Special Housing Unit ("SHU") for 120 days. (Id.) Defendants should have known Plaintiff was diagnosed with obsessive-compulsive

3

disorder ("OCD"), and they should have not intentionally abused him. (Id.) Defendants should have known exposure to "pervasive risk of physical condition[s], and unsanitary [conditions]" would have exacerbated Plaintiff's condition. (Id.) Defendants should have known the presence of birds and rats in the cafeteria would aggravate Plaintiff's condition. (Id.) Defendants should have known serving Plaintiff with a beverage containing aspartame would exacerbate his "cancer-phobia." (Id.)

On or about February 25, 2014, Plaintiff was sanctioned for leaving the law library to "pick up his legal properties." (Id. at 18.) On or about March 9, 2014, Plaintiff was punished after Defendants searched Plaintiff's property while he was not present. (Id.) On or about January 8, 2015, Plaintiff was punished for refusing to follow an officer's orders. (Id.) On or about January 22, 2015, Plaintiff was punished for inquiring about the unsanitary conditions of confinement and how he could get better care. (Id.) On January 30, 2015, Plaintiff was punished because he "filed the various cap out stated that he would not release from general population because of unsanitary of condition [sic]." (Id.) Defendants deprived Plaintiff of "communication tools," so Plaintiff could not communicate with his family for 365 days. (Id. at 19.) Plaintiff was held in SHU for 120 days for no purpose, during which he experienced mental anguish, physical discomfort, and restraint inconsistent with BOP policy. (Id.) Defendants transferred Plaintiff without considering all of the facts. (Id.) Defendants used SHU as a "tool to torture" Plaintiff. (Id.)

Plaintiff is entitled to equitable tolling for his breach of contract claim. (Id. at 21.) Defendants conspired to violate Plaintiff's rights. (Id.) Defendants had a practice of failing to discipline civilian employees. (Id.) Plaintiff was intentionally treated differently than others because of his allegation Defendants are part of a criminal enterprise. (Id. at 22.) Plaintiff was

4

tortured in SHU because of his allegation Defendants are part of a criminal enterprise. (Id. at 22.) Defendants failed to supervise and train subordinates on BOP policies. (Id. at 23.) Defendants failed to protect Plaintiff's constitutional rights by failing to act in accordance with BOP policies. (Id. at 24.) Defendants failed to intervene in the creation of danger when Plaintiff was held in the SHU. (Id.) Plaintiff has standing because he suffered an injury in fact. (Id.) Plaintiff has suffered "Crimes against Humanity as part of the [BOP's] wrongful acquisition." (Id. at 25.)

For relief, Plaintiff seeks declaratory judgment, treble damages, "compensatory; exemplary; punitive; nominal; monetary judgment," attorney's fees, costs, equitable relief, and "the Abolishment of the Apartheid, or Closure of all Private institutions that had case [sic] several death[s] of several immigrants." (Id. at 25.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl.

5

Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

The court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

> **2. Plaintiff Fails to State a Claim against Defendants Because He Does Not State Any Facts Connecting Them To Any Alleged Constitutional Violations**

The Eleventh Circuit has held that a district court properly dismisses a defendant where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state

with some minimal particularity how overt acts of the defendant caused a legal wrong."). Here, Plaintiff fails to allege a single fact against any of the twenty-four named Defendants in his amended complaint. (See doc. no. 33.)

On May 22, 2018, the Court described Plaintiff's original complaint as a "quintessential shotgun pleading" and ordered Plaintiff to file an amended complaint to cure the pleading deficiencies. (Doc. no. 29, p. 3.) In the May 22nd Order, the Court explicitly instructed Plaintiff his amended complaint should include information such as: (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; and (iv) where appropriate, the location where the alleged misconduct occurred. (Doc. no. 29, p. 4.)

Plaintiff utterly failed to correct the pleading deficiencies in his amended complaint. Although Plaintiff's almost nonsensical allegations go on at great length about the alleged violations caused by "defendants," Plaintiff failed to describe how any named Defendant participated in any of the alleged violations against him in spite of the Court's direct instruction to do so. In fact, Plaintiff does not name a single Defendant even one time in the twelve pages of his statement of claims. Without more, Plaintiff does not state any valid claim against any Defendant named in this case.

In short, Plaintiff fails to allege any facts at all suggesting how any named Defendant allegedly violated his rights. Accordingly, Plaintiff fails to state a claim against Defendants, and they should be dismissed from this case.

### 3.     Plaintiff's Complaint Should Also Be Dismissed for Failure to Follow a Court Order

A district court has authority to manage its docket to expeditiously resolve cases, and

7

this authority includes the power to dismiss a case for failure to prosecute or failure to comply with a court order.  Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009) (citing Fed. R. Civ. P. 41(b)); see also Hyler v. Reynolds Metal Co., 434 F.2d 1064, 1065 (5th Cir. 1970)[1] ("It is well settled that a district court has inherent power to dismiss a case for failure to prosecute . . . .").  Moreover, dismissal without prejudice is generally appropriate pursuant to Rule 41(b) where a plaintiff has failed to comply with a court order, "especially where the litigant has been forewarned." Owens v. Pinellas Cnty. Sheriff's Dep't, 331 F. App'x 654, 655 (11th Cir. 2009) (citing Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)); see also Loc. R. 41.1(b) (Court may dismiss an action *sua sponte* for "willful disobedience or neglect of any order of the Court").

In its May 22 and June 12, 2018 Orders, the Court instructed Plaintiff not to attach more than six handwritten pages to his amended complaint.  (Doc. nos. 29, p. 4; 32, p. 2.) Plaintiff acknowledged this instruction in his amended complaint.  (Doc. no. 33, p. 20.) Nevertheless, Plaintiff attached twelve supplemental pages in support of his claims to his amended complaint.[2]  (Id. at 14-19, 21-25.)  While Plaintiff complains the six-page limitation is not appropriate "in such complex litigation," (doc. no. 20), there is no indication Plaintiff was prejudiced by the limitation because, as described above, Plaintiff filled the twelve supplemental pages with conclusory legal statements and unspecific allegations completely unconnected to any named Defendants.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[2] Plaintiff also attached: (1) eight pages naming additional Defendants; (1) one page describing a basis for jurisdiction; and (3) ten pages describing other lawsuits Plaintiff has filed. (Doc. no. 33, pp. 4-12, 32-41.)

Thus, Plaintiff inexcusably failed to comply with the Court's order to limit the number of supplemental pages attached to his amended complaint. Because Plaintiff is proceeding *in forma pauperis*, the Court finds the imposition of monetary sanctions is not a feasible sanction for disobeying the Court's instructions about amending. Thus, even if Plaintiff's amended complaint were not ripe for dismissal based on his failure to allege any facts connecting Defendants to the alleged constitutional violations, Plaintiff's case should be dismissed without prejudice for failing to follow the Court's instructions regarding amending his complaint.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendants be **DISMISSED** for failure to state a claim, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 16th day of July, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA